ILLINOIS CENT R. Co. *v.* AINSWORTH.

[75 South. 755, Division B.]

CARRIERS. *Loss of live stock. Evidence. Sufficiency.*

> Where in an action by a shipper against a common carrier for damages to live stock resulting from alleged negligence in handling them, the evidence showed that the animals were not physically injured, but were in apparently good condition when delivered to the consignee; that in the stockyards from which the stock were shipped there had been a short time before they were placed there, a contagious disease similar to the disease contracted by the animals in question; that live stock shipped from the North to South in that season frequently suffered from shipping cold and that several days after plaintiff received them, several animals developed colds, followed by pneumonia and died, but there was no evidence that this condition resulted from the negligence of defendant, in such case a verdict for plaintiff was erroneous and the court should have given a peremptory instruction for defendant.

APPEAL from the circuit court of Copiah county.

HON. J. B. HOLDEN, Judge.

Suit by A. E. Ainsworth against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes, Wells, May & Sanders,* for appellant.

We respectfully submit to the court that the court below erred in overruling the motion made by the defendant at the close of plaintiff's testimony to exclude the evidence and instruct the jury peremptorily to find a verdict in favor of the defendant.

This was an interstate shipment from the initial point at St. Louis, Illinois, to the City of Jackson, Mississippi, under an interstate contract of affreightment

which is set out in full in this record, and the rights and liabilities of the shipper and of the carrier, with respect to the property transported by freight from one state to another is governed exclusively by the Federal law. *M. K. & T. R. R. Co. v. Harriman,* 227 U. S. 657, 57 L. Ed. 690; *Atchinson, etc., R. Co. v. Robinson,* 233 U. S. 173, 58 L. Ed. 901; *Atchinson, etc., R. R. Co. v. Moore,* 233 U. S. 182, 58 L. Ed. 906; *Ga. F. & A. R. Co. v. Blish Milling Co.,* 241 U. S. 190; *Cin. & N. O., etc., R. Co. v. Rankin,* 241 U. S. 319; *Amer. Silver Mfg. Co. v. Wabash R. R. Co.,* 156 S. W. 830. The effect of the Carmack amendment was to give to the Federal jurisdiction control over interstate commerce and to make the Federal law supreme in all interstate shipment of freight or express. *Atl. & C. L. R. R. Co. v. Thomasville Live Stock Co.,* 79 S. E. 162; *C. N. & T. P. R. R. Co. v. Rankin,* cited *supra.*

It is a well settled principle of law that the burden of proof is on the party who has the affirmative of the issue. The only difficulty arises in a determination of the question as to whether or not in a particular case, a fact must be pleaded and proved by the plaintiff as a part of his cause, or by the defendant as an affirmative defense.

This is an action against the appellant carrier by the shipper to recover damages for loss and injury to live stock being transported, and the burden of showing that the stock was injured while in the possession and custody of the carrier, was on the shipper.

We recognize the general rule that when a loss or injury happened to live stock while in possession of a carrier for transportation, that the burden of proof rests on the carrier to exempt itself from liability, because of the fact that the law imposes on the carrier the obligation of safety, and in order to make out a *prima-facie* case, the owner or shipper is not legally bound to prove more than that the stock were delivered to the carrier in good condition and the failure of the carrier to deliver them

safely, and that these facts, when reasonably established, would be *prima-facie* evidence of the negligence or misconduct.

But in the instant case, at the close of the plaintiff's evidence he had failed to make out a *prima-facie* case of liability.

It is the well-settled rule of law that where the injuries complained of are physical and apparent, the shipper will satisfy the rule requiring him to show an injury to his stock before the burden is cast upon the carrier to exonerate itself by establishing that the stock were delivered to the carrier in good condition, and redelivered by the carrier in an injured condition. But where the injury complained of is sickness, a shipper does not satisfy the rule unless he goes further and shows that the illness of the animals was contracted as a result of the negligence of the carrier. The rule requiring the carrier to exonerate itelf where the animals were delivered in good condition and were redelivered in an uninjured condition, is recognized by this court in the case of; *L. & N., etc., R. R. Co.* v. *Bigger,* 66 Miss. 319, 6 So. 235; *I. C. R. R. Co.* v. *Teens,* 75 Miss. 147, 21 So. 706.

The carrier is not required to prove that injuries to stock were or were not the result of some specific, direct, proximate cause. Proof that it provided all suitable means of transportation and exercised that degree of care which the nature of the property required, is the full extent of the burden cast upon it. *W. R. R. Co.* v. *Johnson,* 114 Ill. App. 545; *Thomas* v. *Wells Fargo Ex. Co.* (Tex., 95 S. W. 723.

A shipper must show an injury to the stock shipped before the burden is cast upon the carrier to exonerate himself, and the injury is not shown where the stock shipped were proven to have been delivered to the carrier in good health and condition, and to have been redelivered to the shipper in a sick and debilitated condition, but with no fractures, wounds, abrasions or other exter-

nal or visible injuries. *Hussey* v. *Saragossa,* 12 Federal Cases, No. 6949; *Pa. R. R. Co.* v. *Raiordon,* 4 Amer. State Rep. 670; *St. L., etc., R. R.* v. *Brosins* (Tex.), 105 S. W. 1131; See, also, *Schaefer* v. *Phil. R. R. Co.,* 168 Pa. St. 209, 47 Amer. St. Rep. 884; *Jones* v. *Minn. & St. L. R. Co.,* 91 Minn. 229, 103 Amer. St. Rep. 507.

*H. J. Wilson,* for appellee.

Appellant relies upon three grounds for the reversal of this case, and I shall treat them in the order in which they appear in the record.

First, it is contended that the court erred in refusing to grant an instruction limiting the value of the horses and mule which died. It was testified that the value of the horses and mule which died was about three hundred and forty five dollars. The verdict was for one hundred and seventy-five dollars only. A large part of the damage consisted in the feeding of several head of stock during their illness and in the payment of veterinary charges. The appellant could not have been damaged by reason of the court refusing to grant this instruction, because the amount allowed by the jury was not as much as the limit of valuation put in the contract.

In the second place, it is contended that the court erred in refusing to charge the jury that unless the plaintiff filed written notice of damages supported by affidavit with an agent of the company, then they should find for the defendant. In answer to this proposition we would call the court's attention to the fact that the original declaration was filed within ten days after plaintiff discovered his injury, and this was a substantial compliance with the provisions of the contract. Aside from this, however, upon examination of the contract we find there is no consideration supporting the provision with reference to the valuation of the stock, or the provision with reference to the filing of notice of claim for damages with

the company.   These identical questions were before the
court in the cases of *Railroad* v. *Harriman Bros.,* 227 U.
S. 657; *Railroad* v. *Bell,* 111 Miss. 82; *Bernstein* v. *Y. &
M. V. R. R. Co.,* 72 Rep. 132, and were there settled by the
court adversely to the contention of appellant here.   The
trial court in refusing to grant instructions Nos. 1 and 2
for appellant followed the rule settled by this court in
the above cases and therefore committed no error.

The third contention of counsel for appellant is that
the proof offered by the plaintiff did not make out a *pri-
ma-facie* case of negligence on the part of appellant, and
the court therefore erred in refusing to grant a peremp-
tory instruction.   We need only to review the facts with
reference to how this car of live stock was handled to be
convinced that the only reasonable explanation of why so
large a number of the stock became ill is that they were
exposed unduly to cold in shipment.

It is contended by counsel for appellant that the evi-
dence fails to show that the sickness of the horses was the
result of the manner in which they were handled.   In an-
swer to this we say the testimony shows that these ani-
mals were well and in good condition at the time they
were delivered to the Railroad Company.   They were
apparently well upon arrival at Jackson, Mississippi,
but in a short time all of them became sick and a large
number of them seriously sick.   The sickness was such
as results only from exposure to cold.   The only exposure
within any reasonable time prior to the breaking out of
the disease was that at Water Valley.   This was a ques-
tion of fact properly to be left to a jury and it seems to us
that no other reasonable conclusion could have been
reached by the jury.   The court properly left this ques-
tion of fact to the jury and their finding must be conclu-
sive.

I therefore submit there was no error committed by
the court below in the trial of this case, and the same
should be affirmed.

COOK, P. J., delivered the opinion of the court.

Appellee, plaintiff below, recovered a judgment against appellant, a common carrier, for damages to horses and mules resulting from alleged negligence in handling a carload of horses and mules from East St. Louis to Jackson, Mississippi. The evidence does not show that the horses and mules had been physically injured, but, on the contrary, they were apparently in good condition when they arrived at their destination and when they were delivered to the consignee. The evidence for plaintiff is to the effect that some two or three days after he had received the animals several of them developed colds, followed by pneumonia, and subsequently died from this disease. The defendant assumed the burden of proving that the stock were carefully handled from East St. Louis to Jackson, that the train was carefully handled, and that the stock were taken from the car at Water Valley, placed under a shed, and there fed and watered.

We can find nothing in the evidence which can be said contradicts the evidence introduced by the defendant. True, the plaintiff, and another witness, testified that about ten days after the stock were delivered at Jackson they went to Water Valley and examined the yard and shed; that the sides of the shed were not boarded up and made impervious to rain; that the rain had been blown through the open sides of the shed, and there was mud and slush under the shed. From this testimony the jury was asked to believe, and evidently did believe, that the horses and mules were standing in mud and water and exposed to the rain blowing under the shed when they were taken off the train ten days before the inspection of the surroundings by plaintiff's witnesses.

The evidence shows that nothing occurred at Water Valley which could have injured the stock. They were apparently in good condition when they reached Jackson; there was no evidence which would justify a reasonable

belief that the stock had been exposed to the weather or had been stood in the mud and slush.

From this record it clearly appears that these horses and mules took cold, which progressed into pneumonia, but there is no reason to believe that this condition resulted from the negligence of defendant. The evidence does show without contradiction that live stock shipped from the North to the South at the season these animals were shipped almost always suffered from what is known as "shipping cold." There was some evidence which tended to prove, that some time before these horses and mules were placed in the stockyards at St. Louis, a contagious disease had been discovered among the stock there confined. The disease was similar to the disease the mules and horses in question are said to have contracted.

The verdict of the jury was manifestly wrong. The court should have instructed the jury to find for the defendant.

*Reversed and dismissed.*